UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZIZ BEKLER,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Respondents. | Case No. 1:25-cv-1961-JDP<br><br>ORDER |

Aziz Bekler ("petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2241. He argues that the named federal officials ("respondents") have wrongfully subjected him to mandatory detention without the opportunity for a bond hearing in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. Petitioner has filed a motion for a temporary restraining order, seeking release from custody under the conditions to which he was subject prior to his recent detention. ECF No. 2-2 at 2.[1] Respondents have

---

[1] The proposed order requests release, reinstatement of petitioner's bond order, and an order enjoining respondents from detaining petitioner without first providing him with a bond hearing before an immigration judge. ECF No. 2-2 at 2. By contrast, the temporary restraining order seeks an order "[d]irecting Respondents to provide [him] with a constitutionally adequate bond hearing before a neutral Immigration Judge within three (3) days, at which the government bears the burden of proving, by clear and convincing evidence, that continued detention is necessary[.]" ECF No. 2 at 16. The court finds that release on his previous conditions of parole to be the most appropriate form of relief because that was "the last uncontested status which preceded the pending controversy." *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804,

1

opposed the motion. ECF No. 14. For the reasons stated hereafter, the motion for a temporary restraining order is granted.

## Background

Petitioner is a Kurdish citizen and Turkish national. ECF No. 2 at 5. He fled Turkey after being persecuted due to his ethnicity and political opinions. *Id.* He sought asylum in the United States. ECF No. 1 at 3-4. Petitioner states that he has, to date, complied with all immigration requirements. ECF No. 2 at 5. Nevertheless, on October 1, 2025, petitioner was detained by Immigration and Customs Enforcement ("ICE") and has been held in civil detention since then. ECF No. 1 at 4-5. He claims that his detention without bond is the result of a new Department of Homeland Security policy instructing ICE employees to designate all noncitizens who enter the country without inspection as ineligible for release on bond pursuant to 8 U.S.C. § 1225(b)(2)(A). ECF No. 1 at 10. The petition alleges violations of: (1) the INA; (2) petitioner's Fifth Amendment right to Due process and Equal Protection; (3) the Administrative Procedure Act; (4) the Constitution's Suspension Clause; and (5) immigration enforcement regulations outlined in 8 C.F.R. § 287.8(c). ECF No. 1 at 10-20.

## Legal Standard

A temporary restraining order, as with any preliminary injunctive relief, is an extraordinary remedy that is not awarded as of right. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standards governing temporary restraining orders are "substantially similar" to those governing preliminary injunctions. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). To obtain injunctive relief, petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Although the court must consider all four *Winter* factors, the first factor—likely success on the merits—is the most important. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir.

---

809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)); *see also Corpuz v. Cooper*, No. 2:25-cv-02347-TLN-CSK, 2025 U.S. Dist. LEXIS 179226, *2 (E.D. Cal. Sept. 11, 2025) ("The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.").

2023).

## Analysis

This order considers whether movant has a "fair chance of success on the merits." *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). After review of the *Winter* factors, the court finds that petitioner has carried his burden, and a temporary restraining order will issue.

### I. Likelihood of Success of the Merits

The parties do not dispute that petitioner was encountered and arrested by immigration officials in Texas in May 2022. ECF No. 14 at 2. He was subsequently released on parole after this encounter and filed for asylum thereafter. *Id.* Respondents contend that this parole release does not confer any due process rights and that "an alien seeking admission is physically present on U.S. soil and has been 'paroled elsewhere in the country for years pending removal, he still is treated . . . as if stopped at the border' for immigration law purposes." *Id.* at 10 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). The court is unconvinced that petitioner is devoid of due process rights and instead finds persuasive petitioner's argument that his detention violated his due process rights.[2] Protected liberty interests may arise from an official's discretionary decision to release a noncitizen. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Calderon v. Kaiser*, 2025 U.S. Dist. LEXIS 163975, *5

---

[2] As previously stated, the court is not ruling on the merits of any argument, merely evaluating the likelihood of success for the purposes of the *Winter* analysis. Additionally, a finding of likely success on petitioner's due process argument obviates the need to consider the parties' arguments as to whether section 1225 or 1226 applies. *See M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO, 2025 U.S. Dist. LEXIS 230783, *24 (E.D. Cal. Nov. 21, 2025) ("Thus, because petitioner has been present in the United States for approximately two years and was released on her own recognizance by ICE before Respondents adopted the new interpretation of the governing statutes, the Court concludes that the government's recent interpretation of the relationship between § 1225 and § 1226, even assuming it is correct—though the Court is unconvinced that it is—does not apply here such that detention is not 'mandatory' in this case.").

(N.D. Cal. Aug. 22, 2025) ("A noncitizen released from custody pending removal proceedings therefore has a protected liberty interest in remaining out of custody.").

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-citizen before depriving her of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the respondents' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. Here, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been released in the United States under the supervision of ICE for approximately three years prior to re-detention. ECF No. 1 at 4. During that time, he applied for asylum and worked lawfully. *Id.*

As for the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released under supervision after his initial detention in 2022. ECF No. 1 at 4. Prior to releasing petitioner, immigration officers determined that he was neither a flight risk nor danger to the community. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. Jul. 24, 2025) (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). And respondents have offered no evidence that he has become a flight risk or danger to the community in the time since. Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high, given the possibility that petitioner's re-

detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB (HC), 2025 U.S. Dist. LEXIS 230551, *7-8 (E.D. Cal. Nov. 22, 2025) ("[C]ivil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community . . . ."). Respondents do not argue that petitioner is now a danger to public safety or a flight risk; indeed, they provide no explanation for his re-detention. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.

The third *Matthews* factor also weighs in petitioner's favor, as respondents' interest in detaining petitioner without a hearing is low. *See Salazar v. Casey*, No.: 25-CV-2784 JLS (VET), 2025 U.S. Dist. LEXIS 216353, *14 (S.D. Cal. Nov. 3, 2025) ("[T]he Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'").

On balance, an initial weighing of the *Mathews* factors strongly indicates that petitioner was entitled to notice and an opportunity to be heard before re-detention. Accordingly, the court finds that petitioner has satisfied the first *Winter* factor.

II.     **Irreparable Harm**

I find that petitioner has shown that he will suffer irreparable harm absent a temporary restraining order. The Court of Appeals has recognized that anyone subject to immigration detention is exposed to irreparable harms. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) ("The briefs of amici curiae highlight in more concrete terms the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)."); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

### III. Balance of Equities and the Public Interest

Where the government is a party to the case, the last two *Winter* factors are considered together. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These factors weigh in favor of petitioner. First, the Ninth Circuit has stated that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). Second, respondents have not shown that, if petitioner were released, he would pose a danger to the community or a flight risk.

### IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the "court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the court will not require petitioners to provide security.

Accordingly, it is hereby ORDERED that:

1. Petitioner's motion for temporary restraining order, ECF No. 2, is GRANTED.

2. Respondents are ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his October 2025 detention.

3. Respondents are enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator.

IT IS SO ORDERED.

Dated:    January 5, 2026                       _____
                                                JEREMY D. PETERSON
                                                UNITED STATES MAGISTRATE JUDGE

7